UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH BRODIE,<br><br>      Petitioner,<br><br>    v.<br><br>THE UNITED STATES OF AMERICA,<br><br>      Respondent. | No. 20-cv-12713 (NLH)<br><br><br>OPINION |

APPEARANCE:

Joseph Brodie
5 Waterville Road
Manalapan, NJ 07726

    *Petitioner Pro se*

Philip R. Sellinger, United States Attorney
Sara Aliya Aliabadi, Assistant United States Attorney
U.S. Attorney's Office for the District of New Jersey
401 Market Street
P.O. Box 2098
Camden, NJ 08101

    *Attorneys for Respondent*

HILLMAN, District Judge

    Petitioner Joseph Brodie ("Petitioner") is proceeding pro se on his amended motion to vacate, set aside, or correct his federal sentence under 28 U.S.C. § 2255.  ECF No. 20.  See United States v. Brodie, No. 18-cr-00162 (D.N.J. Dec. 23, 2019) ("Crim. Case").  Respondent United States opposes the motion.  ECF No. 47.

1

Presently before the Court are three motions filed by Petitioner: a motion to terminate or amend the conditions of his supervised release, ECF No. 56; a motion for entry of default, ECF No. 57; and a motion for sanctions, ECF No. 58. Respondent has not filed any response to these motions. For the reasons below, the Court will deny the motions.

I.   BACKGROUND

Petitioner was convicted of two counts of threatening to assault and murder a United States congressman, 18 U.S.C. §§ 115(a)(1)(B) and (b)(4) (2018). The Court adopts and recites the facts underlying Petitioner's federal convictions as stated by the United States Court of Appeals for the Third Circuit in its opinion denying Petitioner's direct appeal:

> Brodie is a decorated war veteran who served in both the United States Marine Corps and the Army. In 2003, Brodie was seriously wounded while serving as a machine gunner in Iraq. He suffered a traumatic brain injury, seizure disorder, hearing damage, migraines, and post-traumatic stress disorder. These conditions require ongoing medical care. When Brodie later moved to New Jersey in 2017, he encountered multiple obstacles in receiving care from the Veteran's Health Administration and Veteran's Benefits Administration (collectively, the "VA").
>
> Brodie learned that New Jersey Congressman Frank LoBiondo was an advocate for veterans, and he contacted the Congressman's office for assistance. The Congressman's staffer and veterans' liaison Michael Francis was tasked with aiding Brodie. The pair spoke regularly, but the relationship steadily declined. In September 2017, Brodie made various threats to Francis and others through e-mails and a phone call. At one point, Brodie sent an e-mail asking for a face-to-face

> meeting with Congressman LoBiondo, attaching a Google Earth image showing the location of the Congressman's office.  That same evening, Brodie told his fiancée that he wanted to die in a gun fight.  He also admitted to threatening the life of the Congressman's Chief of Staff, Jason Galanes, and stated he was not "going down without a fight."  Concerned, his fiancée asked the New Jersey state police to perform a welfare check on Brodie.
>
> The state troopers arrived at Brodie's residence.  Brodie exited his home with a firearm in hand.  He explained that he did not want to shoot the officers, and instead, put the firearm into his own mouth, sank to his knees, and pulled the trigger.  Twice the weapon failed to discharge.  At that point, Brodie surrendered.  He was taken into custody, read his Miranda rights, and eventually given a mental health evaluation. Several days later, Brodie was interviewed by the FBI.  He was again read his Miranda rights, at which point he executed a written waiver of those rights. Brodie gave an inculpatory statement during the interview.

United States v. Brodie, 824 F. App'x 117, 119 (3d Cir. 2020) (footnote omitted).  The Court sentenced Petitioner to a total term of 87 months imprisonment followed by a three-year supervised release period on December 23, 2019.  Crim. Case No. 178.  Petitioner appealed, and the Third Circuit affirmed the convictions and sentence.  Brodie, 824 F. App'x 117.

Petitioner filed his original § 2255 motion on September 14, 2020.  ECF No. 1.  The Court sua sponte appointed counsel to represent Petitioner and ordered counsel to submit an amended motion.  ECF No. 2.  Shortly thereafter, Petitioner moved to terminate the appointment of counsel and proceed pro se.  ECF No. 16.  Petitioner submitted an amended pro se motion.  ECF No. 20.  The Court granted the motion to proceed pro se and

3

permitted counsel to withdraw from representation.  ECF No. 22.  The Court also advised Petitioner of his rights under United States v. Miller, 197 F.3d 644 (3d Cir. 1999).  Id. at 3.  Petitioner responded that he would like to proceed with his amended motion as filed, ECF No. 23, and the Court directed the United States to answer the amended motion, ECF No. 25.

On December 20, 2022, Petitioner filed a motion to "[a]mend/ Suspend/ Terminate the conditions of his supervised release pending the Court's ruling to VACATE his conviction . . . ."  ECF No. 56.  On January 22, 2023, he filed a motion for an entry of default based on the United States' lack of response to his motion.  ECF No. 57.  On January 24, 2023, he filed a motion for sanctions based on "successive, unanswered, meritorious Motions demonstrative of the types of criminal actions and misconduct unbecoming of an agent of the Court and expressly prohibited in The Federal Rules of Criminal & Civil Procedure . . . ."  ECF No. 58.[1]

II.   ANALYSIS

A.   Modification of Supervised Release

Petitioner's first motion asks the Court to "[a]mend/ Suspend/ Terminate the conditions of his supervised release

---

[1] The Court considers these motions on the papers pursuant to Federal Rule of Civil Procedure 78(b).  Petitioner's request for a status conference is denied.  ECF No. 59.

4

pending the Court's ruling to VACATE his conviction . . . ." ECF No. 56. Modification and termination of supervised release are governed by 18 U.S.C. § 3583(e). The statute provides, in relevant part:

> The court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[,]
>
> terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice; [or]
>
> extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision . . . .

18 U.S.C. § 3583(e)(1)-(2).

The Court lacks the authority under § 3583 to terminate Petitioner's supervised release at this time. Petitioner began his term of supervised release on December 20, 2022. ECF No. 56-3 at 1. "Section 3583(e)(1) contemplates the reduction of a term of supervised release only after a defendant has served one year of his term of supervised release." United States v. Nestor, 461 F. App'x 177, 179 (3d Cir. 2012). Petitioner cannot

5

request termination of his supervised release before December 20, 2023. Therefore, the Court must deny Petitioner's request to terminate his supervised release.

Petitioner cites no authority that would permit this Court to stay his supervised release term pending a decision on his § 2255 motion, but the Court liberally construes the motion as a request to "modify" the start date of Petitioner's supervised release. By statute, "[t]he term of supervised release commences on the day the person is released from imprisonment . . . ." 18 U.S.C. § 3624(e). See also United States v. Johnson, 529 U.S. 53, 57 (2000) ("A term of supervised release comes 'after imprisonment,' once the prisoner is 'released by the Bureau of Prisons to the supervision of a probation officer.'" (quoting 18 U.S.C. § 3624(e))). "The phrase 'on the day the person is released,' in the second sentence of § 3624(e), suggests a strict temporal interpretation, not some fictitious or constructive . . . time." Id. The Court lacks the authority to "modify" Petitioner's supervised release as requested.

The Court will deny Petitioner's motion to terminate or modify his supervised release.

B.  Motion for Entry of Default

Petitioner also moves for an entry of default against the United States for failing to respond to his supervised release motion. ECF No. 57. "The Plaintiff submits the Defendant lacks

6

any sound rationale or legal defense of the exhibits corroborating the accusations of various actions of criminal misconduct while seeking the conviction of the Plaintiff . . . ." Id. at 1-2. "The Plaintiff submits The Federal Rules of Civil Procedure define 'default' as 'when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend.'" Id. at 2 (quoting Fed. R. Civ. P. 55(a)).

The United States has not defaulted; it filed its answer to Petitioner's § 2255 motion on August 17, 2022. ECF No. 47. The United States' decision not to file opposition to Petitioner's motion does not constitute default and does not entitle Petitioner to automatic relief. The Court will deny the motion for entry of default.

C.  Motion for Sanctions

Petitioner's final motion asks for sanctions against the United States. ECF No. 58. Plaintiff asserts that his numerous submissions to the Court "contained evidence of prosecutorial misconduct" and "Defendant did not object to the Motion to Terminate the Supervision" and "did not defend against the" accusations of prosecutorial misconduct. Id. at 1-2. "The Plaintiff submits this Motion for Sanctions is just and with cause as details the instances of prosecutorial misconduct and violations of the standards of professional conduct in the course of acquiring a conviction . . . ." Id. at 5.

7

The Court will deny the motion for sanctions.  Rule 11 sanctions are "intended to be used only in 'exceptional' circumstances."  Ferreri v. Fox, Rothschild, O'Brien & Frankel, 690 F. Supp. 400, 405 (E.D. Pa. 1988).  The Court is in the process of reviewing Petitioner's voluminous filings and will address the allegations of prosecutorial misconduct during Petitioner's trial in its final opinion.  At this time, the Court concludes Rule 11 sanctions are not warranted.  Petitioner's motion shall be denied.

III. CONCLUSION

For the reasons stated above, Plaintiff's motions will be denied.

An appropriate order follows.

Dated: February 21, 2023                s/ Noel L. Hillman
At Camden, New Jersey                   NOEL L. HILLMAN, U.S.D.J.