UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH BRODIE,                                    No. 20-cv-12713 (NLH)

        Petitioner,

    v.                                                OPINION

THE UNITED STATES OF AMERICA,

        Respondent.

APPEARANCE:

Joseph Brodie
121 Washington Street
West Pittston, PA 18643

        *Petitioner Pro se*

Philip R. Sellinger, United States Attorney
Sara Aliya Aliabadi, Assistant United States Attorney
U.S. Attorney's Office for the District of New Jersey
401 Market Street
P.O. Box 2098
Camden, NJ 08101

        *Attorneys for Respondent*

HILLMAN, District Judge

        Petitioner Joseph Brodie ("Petitioner") is proceeding pro

se on his amended motion to vacate, set aside, or correct his

federal sentence under 28 U.S.C. § 2255.  ECF No. 20.  See

United States v. Brodie, No. 18-cr-00162 (D.N.J. Dec. 23, 2019)

("Crim. Case").  Respondent United States opposes the motion.

ECF No. 47.

1

For the reasons below, the Court will dismiss the amended motion in part as procedurally defaulted and deny the amended motion in part.

I.   BACKGROUND

Petitioner was convicted of two counts of threatening to assault and murder a United States congressman, 18 U.S.C. §§ 115(a)(1)(B) and (b)(4) (2018).  The Court adopts and recites the facts underlying Petitioner's federal convictions as stated by the United States Court of Appeals for the Third Circuit in its opinion denying Petitioner's direct appeal:

> Brodie is a decorated war veteran who served in both the United States Marine Corps and the Army.  In 2003, Brodie was seriously wounded while serving as a machine gunner in Iraq.  He suffered a traumatic brain injury, seizure disorder, hearing damage, migraines, and post-traumatic stress disorder.  These conditions require ongoing medical care.  When Brodie later moved to New Jersey in 2017, he encountered multiple obstacles in receiving care from the Veteran's Health Administration and Veteran's Benefits Administration (collectively, the "VA").
>
> Brodie learned that New Jersey Congressman Frank LoBiondo was an advocate for veterans, and he contacted the Congressman's office for assistance.  The Congressman's staffer and veterans' liaison Michael Francis was tasked with aiding Brodie.  The pair spoke regularly, but the relationship steadily declined.  In September 2017, Brodie made various threats to Francis and others through e-mails and a phone call.  At one point, Brodie sent an e-mail asking for a face-to-face meeting with Congressman LoBiondo, attaching a Google Earth image showing the location of the Congressman's office.  That same evening, Brodie told his fiancée [Dana Mednick] that he wanted to die in a gun fight.  He also admitted to threatening the life of the Congressman's Chief of Staff, Jason Galanes, and stated he was not

> "going down without a fight."  Concerned, his fiancée
> asked the New Jersey state police to perform a welfare
> check on Brodie.
>
> The state troopers arrived at Brodie's residence.
> Brodie exited his home with a firearm in hand.  He
> explained that he did not want to shoot the officers,
> and instead, put the firearm into his own mouth, sank to
> his knees, and pulled the trigger.  Twice the weapon
> failed to discharge.  At that point, Brodie surrendered.
> He was taken into custody, read his <u>Miranda</u> rights, and
> eventually given a mental health evaluation.  Several
> days later, Brodie was interviewed by the FBI.  He was
> again read his <u>Miranda</u> rights, at which point he executed
> a written waiver of those rights.  Brodie gave an
> inculpatory statement during the interview.

<u>United States v. Brodie</u>, 824 F. App'x 117, 119 (3d Cir. 2020)

(footnote omitted).

The Court appointed Thomas Young, an assistant federal

public defender, to represent Petitioner.  Crim. Case No. 5.[1]

Ralph Jacobs, Esq. was later substituted as counsel and filed

several motions on Petitioner's behalf, including motions for

release, bail review, motions to suppress evidence, and a motion

to suppress Petitioner's statement.  Crim. Case Nos. 17, 34, 38,

73, & 77.  Magistrate Judge Joel Schneider denied Petitioner's

motion for release from custody.  Crim. Case No. 25.

This Court conducted oral argument on Petitioner's

suppression motions over several dates, hearing testimony from

Petitioner, Mednick, and different law enforcement officers.

---

[1] Petitioner was represented by different counsel during the
criminal case.  The Court refers to the attorneys by their names
for clarity's sake.

July 6, 2018 Hr'g Tr., Crim. Case No. 54; July 16, 2018 Hr'g
Tr., Crim. Case No. 57; July 26, 2018 Hr'g Tr., Crim. Case No.
58; and Aug. 27, 2018 Hr'g Tr., Crim. Case No. 68.  The Court
concluded that the United States had satisfied its burden and
denied Petitioner's motion to suppress his statement.  Crim.
Case Nos. 67 & 86.  It found that Petitioner was not in custody
when officers arrived at his residence.  The Court further
concluded that Petitioner's statement to the FBI did not occur
after an invocation of his Fifth Amendment right to counsel.
Aug. 27, 2018 Hr'g Tr. at 13:7-12.  See also Crim. Case No. 67
(Order denying and dismissing defense motions).

Petitioner withdrew his motion challenging the validity of
the federal search warrants on his cellular devices after the
parties agreed to have the FBI produce the phones to Cornerstone
Discovery, a third-party vendor selected by Petitioner, "to
download the contents of the devices and give copies those
downloads to the defense."  Crim. Case No. 52 (Order documenting
procedure).

Trial began on October 1, 2018, ending in Petitioner's
conviction on October 10, 2018.  Crim. Case No. 103.  Petitioner
testified on his own behalf.  Jacobs filed motions for a
directed verdict and new trial on October 31, 2018.  Crim. Case
No. 109.  The Court held oral argument on January 14, 2019 and
denied the motions on the record.  Crim. Case No. 123.  The Court

4

appointed Petitioner new counsel at his request, naming Paul
Sarmousakis, Esq. on March 27, 2019.  Crim. Case No. 125.
Petitioner again sought new counsel on June 6, 2019.  Crim. Case
No. 128.  The Court appointed Gina Amoriello, Esq.  Crim. Case
No. 136.

Amoriello filed a motion for a new trial under Federal Rule
of Criminal Procedure 33 on October 22, 2019.  Crim. Case No.
167.  The motion alleged Petitioner had received photographs
taken during the search at his residence, "as well as fax
records that confirm that Mr. Brodie faxed documentation to the
State Police on prior occasions," from the attorney representing
him in related state court proceedings.  Id. at 2.  Petitioner
alleged these items corroborated his testimony but had been
withheld by the United States.

The motion further argued that Petitioner had "received a
hard-drive from [Amoriello] which included any and all evidence
provided to her in his federal case, from all prior counsel as
well as the Government.  Upon review of the hard-drive
discovery, Mr. Brodie saw (for the first time) an FBI Extraction
Report dated June 4, 2018 (before the Motions hearing) . . . ."
Id. at 3.  According to the motion, the hard-drive included
calls between Petitioner and Michael Francis that were not
reflected on the AT&T bill that had been produced by the U.S
House of Representatives.  "The defense contends that the delay

5

in turning over this extraction (which had the evidence of calls being made), whether a mistake, oversight, or intentional, amounts to prosecutorial misconduct by denying [Petitioner] his right to potentially exculpatory impeachment evidence regarding the existence of calls prior to his testimony at the motions hearing." Id. at 4.  The Court denied the motion on November 19, 2019.  Crim. Case No. 176.

The Court sentenced Petitioner to a total term of 87 months imprisonment followed by a three-year supervised release period on December 23, 2019.  Crim. Case No. 178.  Petitioner appealed, and the Third Circuit affirmed the convictions and sentence. Brodie, 824 F. App'x 117.

Petitioner filed his original § 2255 motion on September 14, 2020.  ECF No. 1.  The Court sua sponte appointed counsel to represent Petitioner and ordered counsel to submit an amended motion.  ECF No. 2.  Shortly thereafter, Petitioner moved to terminate the appointment of counsel and proceed pro se.  ECF No. 16.  Petitioner submitted an amended pro se motion.  ECF No. 20.  The Court granted the motion to proceed pro se and permitted counsel to withdraw from representation.  ECF No. 22. The Court also advised Petitioner of his rights under United States v. Miller, 197 F.3d 644 (3d Cir. 1999).  Id. at 3. Petitioner responded that he wished to proceed with his amended

motion as filed, ECF No. 23, and the Court directed the United

States to answer the amended motion, ECF No. 25.

II.  STANDARD OF REVIEW

    Section 2255 provides in relevant part that

    [a] prisoner in custody under sentence of a court
    established by Act of Congress claiming the right to be
    released upon the ground that the sentence was imposed
    in violation of the Constitution or laws of the United
    States ... may move the court which imposed the sentence
    to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).[2]

III. DISCUSSION

    Petitioner makes numerous allegations of prosecutorial

misconduct and ineffective assistance of counsel throughout the

numerous filings in this matter.  At the core of his motion are

allegations that the United States improperly withheld

exculpatory materials from him in violation of Brady v.

Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405

U.S. 150 (1972).  Specifically, Petitioner alleges the United

States withheld his complete medical records from his September

21, 2017 evaluation at Inspira Bridgeton, Officer Luis Rivera-

Guzman's CAD report, cellular records from AT&T, photographs

from the search of Petitioner's residence, and SMS and fax

_____

[2] Petitioner has been released from physical custody but remains
on supervised release.  A motion to amend the terms of his
supervised release is before the Court in Petitioner's criminal
case.

messages between Petitioner and Trooper Phil Smith.  According to Petitioner, these materials impacted the Court's consideration of Petitioner's motion to suppress his statement and well as trial and sentencing.  Petitioner also alleges trial counsel Jacobs was ineffective in connection with preparing Petitioner's defense.

A district court must hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief.  28 U.S.C. § 2255(b); see also United States v. Arrington, 13 F.4th 331, 334 (3d Cir. 2021).  Here, the record conclusively demonstrates that Petitioner is not entitled to relief.  Therefore, the Court will not conduct an evidentiary hearing.

A.   Reargument Bar

The United States argues that many of Petitioner's claims are barred because they were decided on direct appeal.  ECF No. 47 at 27.  "[A]s a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."  Foster v. Chatman, 578 U.S. 488, 519 (2016) (Alito, J., concurring).  See also United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) ("[I]ssues resolved in a prior direct appeal will not be reviewed again by way of a § 2255 motion . . . ."); United

States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993).  "That
rule is an embodiment of the law-of-the-case doctrine, which
provides that 'when a court decides upon a rule of law, that
decision should continue to govern the same issues in subsequent
stages in the same case.'"  United States v. Thomas, 750 F.
App'x 120, 124, (3d Cir. 2018) (quoting Farina v. Nokia Inc.,
625 F.3d 97, 117 n.21 (3d Cir. 2010)).  There are exceptions to
this general rule, and the Court has "discretion to revisit the
law of the case when '(1) new evidence is available; (2) a
supervening new law has been announced; or (3) the earlier
decision was clearly erroneous and would create manifest
injustice.'"  Id. (quoting Schneyder v. Smith, 653 F.3d 313,
331-32 (3d Cir. 2011)).

Petitioner argued on direct appeal that (1) "the District
Court erred in denying his motion to suppress"; (2) "it was
error for the District Court to apply sentencing enhancements
under United States Sentencing Guidelines §§ 2A6.1(b)(1) and
3C1.1.4;" and (3) "the District Court erred in failing to grant
certain downward departures or variances at sentencing." United
States v. Brodie, 824 F. App'x 117, 120 (3d Cir. 2020).  In his
§ 2255 motion, Petitioner again challenges this Court's
application of U.S.S.G. § 3C1.1 and the Court's order denying
the motion to suppress.  He argues the complete Inspira records,

the Guzman CAD report, and AT&T records are "new evidence" that
warrant relief.

The Third Circuit affirmed this Court's decision to deny
Petitioner's motion to suppress his statements to the FBI.  "As
the District Court correctly determined, Brodie was not in
custody when the officers first arrived at his house; thus no
Miranda warnings were required.  And it is undisputed that he
executed a written waiver of his Miranda rights before speaking
with the FBI.  Moreover, the evidence at the suppression hearing
amply supported the District Court's credibility findings."
Brodie, 824 F. App'x at 120-21 (footnotes omitted).  Petitioner
argues that his "newly acquired evidence REFUTES [the Court's
findings] as erroneous because the government disclosed altered
medical records omitting the critical notes of the mental health
evaluators regarding questions and conditions at Inspira
Bridgeton."  ECF No. 20 at 29.  The Court has reviewed the
numerous "evidentiary supplements" and "exhibits" filed by
Petitioner and sees no reason to revisit this decision.

Petitioner also challenges the Court's application of the
sentencing enhancement under U.S.S.G. § 3C1.1.  "A two-level
enhancement is permitted under § 3C1.1 when a defendant
'willfully obstructed or impeded, or attempted to obstruct or
impede, the administration of justice with respect to the
investigation, prosecution or sentencing of the instant offense

10

of conviction.'" Brodie, 824 F. App'x at 122.  The Court found

this enhancement was appropriate due to Petitioner's false

testimony that he (i) invoked his right to counsel; and (ii)

received pornographic images from Francis.  The Court noted a

pattern of Petitioner making

> claims of prosecutorial misconduct, claims of Brady
> violations, assaults on the integrity of the agents, the
> State Police, everyone involved in the process, the
> complicated nature of the forensic examination, the
> famous photograph that's never been produced, all of it
> essentially a campaign of vilification of the government
> designed to complicate, confuse, complicate these
> proceedings, confuse the issues, distract from the Court
> claims, allegations in the indictment, and to wage a war
> of attrition against the government hoping that some
> smoke and fog would dissuade them from fully prosecuting
> this matter.

Sen. Hr'g Tr., Crim. Case No. 189 at 170:3-15.  "[I]t is one

thing to stand on your right to be silent, it's another thing to

exercise your constitutional right to testify, but to lie under

oath, to make accusations of fact, which had no support to begin

with and have proven to be untrue, in order to complicate and

prolong the proceedings I believe is fully within the range of

3C1.1." Id. 171:14-19.  Petitioner raised this claim on direct

appeal, and the Third Circuit concluded the application "[did]

not rise to the level of clear error." Brodie, 824 F. App'x at

122.

Nothing in the voluminous submissions by Petitioner

warrants reexamining this claim.  The Court has reviewed the

numerous "evidentiary supplements" and "exhibits" filed by Petitioner and sees no reason to revisit this decision. Accordingly, these claims are dismissed as procedurally barred.

B.   Procedural Default

The United States argues the amended petition should be dismissed as procedurally defaulted because it raises issues that could have been raised on direct appeal but were not.  "As a collateral challenge, a motion pursuant to 28 U.S.C. § 2255 is reviewed much less favorably than a direct appeal of the sentence." United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014).  In addition to the bar on issues that were raised on direct appeal, "issues which should have been raised on direct appeal may not be raised with a § 2255 motion." Id. at 288 n.11 (citing United States v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir. 1993)).

Petitioner makes several allegations of prosecutorial misconduct, including, but not limited to, failing to disclose impeachment and exculpatory evidence, disclosing "altered" or "incomplete" evidence, and suborning perjury.  ECF No. 20 at 17-20, ¶¶ 2, 4, & 12.  He alleges law enforcement, among other things, omitted facts from the search warrant affidavit, conducted an illegal search of his phone, planted evidence, deleted evidence, failed to preserve evidence, withheld

evidence, tampered with his security system, and committed perjury.  Id. ¶¶ 1, 3, 5-11, 13-14, & 17.

Petitioner further argues this Court erred by "failing to ensure sequestering of government witnesses in Motion to Suppress proceedings and during Brodie's trial" and "allowing photographs of Brodie's firearms assembled when at the time of his offense were either disassembled, not functioning properly, or not in his immediate possession and, subsequently, inflam[ing] the jury's sensitivities . . . ."  Id. ¶¶ 15 & 18-19.  These claims could have been raised on direct appeal but were not.

Petitioner's Rule 33 motion alleged that he had received photographs taken during the search at his residence, "as well as fax records that confirm that Mr. Brodie faxed documentation to the State Police on prior occasions," from the attorney representing him in related state court proceedings.  Crim. Case No. 167 at 2.  The motion further argued that Petitioner had "received a hard-drive from present counsel [Amoriello] which included any and all evidence provided to her in his federal case, from all prior counsel as well as the Government.  Upon review of the hard-drive discovery, Mr. Brodie saw (for the first time) an FBI Extraction Report dated June 4, 2018 (before the Motions hearing) . . . ."  Id. at 3.  Petitioner's allegations of prosecutorial and police misconduct stem from

13

these documents, which Petitioner knew about prior to filing his direct appeal.

Petitioner argues that "[t]his Court reviewed that Motion and its evidentiary attachments and deemed the Motion as 'more of an issue (later) for a 2255.'" ECF No. 48 at 12. However, this comment was made by the Assistant United States Attorney, not the Court, reflecting the United States' position that Petitioner's argument was not appropriate for a Rule 33 motion. Nov. 6. 2019 Hr'g Tr., Crim. Case No. 188 at 11:8-16. Put differently, the United States was expressing its belief that claims of ineffective assistance of counsel based on Jacobs' decision not to investigate any discrepancy between the phone bill, which had been provided to both parties by congressional counsel, and the extraction reports from Petitioner's phones, which Jacobs possessed at the time of trial, were better suited to a § 2255 motion.[3]  It was not a finding by this Court that all

---

[3] Jacobs subpoenaed Francis' phone records from the U.S. House of Representatives.  Nov. 6, 2019 Hr'g Tr. Crim. Case No. 188 4:10-11.  Congressional counsel intervened and provided a redacted one-page bill to both parties that showed two calls between Francis and Petitioner, exhibit D-301.  Id. 4:13-16.  The bill was not shown to the jury.  In his motion for a new trial, Petitioner asserted that the FBI and Cornerstone extraction reports showed more than two phone calls between Petitioner and Francis.  Crim. Case No. 167 at 3-4.  Francis testified during trial that he spoke frequently with Petitioner throughout the spring and summer of 2017.  Oct. 4, 2018 Tr. Crim, Case No. 110 42:24 to 43:3.  The FBI and Cornerstone extraction reports were available to Jacobs prior to trial, and Petitioner conceded that the FBI extraction report was the "fullest record of any

14

the issues raised in the Rule 33 motion were appropriate for a §
2255 motion.

"[A] collateral challenge may not do service for an
appeal." United States v. Frady, 456 U.S. 152, 165 (1982). See
also United States v. Braddy, 837 F. App'x 112, 115 (3d Cir.
2020) ("A § 2255 motion does not function as a second appeal . .
. ."). "[T]he general rule [is] that claims not raised on
direct appeal may not be raised on collateral review unless the
petitioner shows cause and prejudice." Massaro v. United
States, 538 U.S. 500, 504 (2003).[4] Petitioner spoke at length
about the alleged prosecutorial and law enforcement misconduct
during sentencing, meaning he was fully aware of the factual
basis of his claims prior to his appeal.  Amoriello continued to
represent Petitioner during his appeal and did not raise these
claims to the Third Circuit.[5]  Petitioner has not shown cause for
failing to present these claims on direct appeal, so he is
barred from presenting them now in his § 2255 motion.  The Court

---

transactions on Mr. Brodie's phones[.]"  Nov. 6, 2019 Hr'g Tr.
12:8-12, 18:1-4.

[4] This does not apply to ineffective assistance of counsel
claims.  "A § 2255 motion is a proper and indeed the preferred
vehicle for a federal prisoner to allege ineffective assistance
of counsel."  United States v. Nahodil, 36 F.3d 323, 326 (3d
Cir. 1994).

[5] Petitioner makes no allegation of ineffective assistance of
appellate counsel.

will dismiss the amended petition as procedurally barred, except for the ineffective assistance of counsel claims.

C.    Ineffective Assistance of Counsel

Under Strickland v. Washington, a claim of ineffective assistance of counsel requires a petitioner to show that (1) defense counsel's performance was deficient and (2) the deficiency actually prejudiced the petitioner.  466 U.S. 668, 687 (1984).  "The deficiency prong asks whether counsel's performance fell below an objective standard of reasonableness." United States v. Brunson, No. 20-3587, 2023 WL 3750596, at *2 (3d Cir. June 1, 2023) (citing Strickland, 466 U.S. at 687-88). This is a high standard, especially given the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 689; United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989).  A court must be "highly deferential" to a defense counsel's decisions and should not "second-guess counsel's assistance after conviction."  Strickland, 466 U.S. at 689; Berryman v. Morton, 100 F.3d 1089, 1094 (3d Cir. 1996).  "To overcome that presumption, the challenger must show that the posited strategy did not motivate counsel or that counsel's 'actions could never be considered part of a sound strategy.'"  Brunson, 2023 WL 3750596, at *2 (quoting Thomas v. Varner, 428 F.3d 491, 499 (3d Cir. 2005)).

16

For the second Strickland prong, Petitioner must show "a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different.
A reasonable probability is a probability sufficient to
undermine confidence in the outcome." Strickland, 466 U.S. at
694.  "The likelihood of a different result must be substantial,
not just conceivable." Harrington v. Richter, 562 U.S. 86, 112
(2011).

"[T]here is no reason for a court deciding an ineffective
assistance claim to approach the inquiry in the same order or
even to address both components of the inquiry if the defendant
makes an insufficient showing on one." Strickland, 466 U.S. at
697.  "If it is easier to dispose of an ineffectiveness claim on
the ground of lack of sufficient prejudice, which we expect will
often be so, that course should be followed." Id.  See also
United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002)
("Because failure to satisfy either prong defeats an ineffective
assistance claim, and because it is preferable to avoid passing
judgment on counsel's performance when possible, we begin with
the prejudice prong.").

Most of Petitioner's ineffective assistance of counsel
claims are rooted in Petitioner's September 21, 2017 medical

17

records from Inspira Health Center Bridgeton, ECF No. 53-54;[6]
Guzman's CAD report, ECF No. 3 at 5-6; and extraction reports
for Petitioner's cellular devices and fax machine, ECF No. 9.
He argues the United States only produced 17 pages of his
Inspira records, concealed the complete Inspira records, and
withheld the CAD report and extraction reports.[7]  The United
States disputes that accusation and argues that it produced
those items to counsel prior to trial.  ECF No. 47 at 28-29.  In
his reply papers, Petitioner asserted that Jacobs failed to use
these items as impeachment evidence:

> The findings of the Court in evidentiary hearings with
> regard to Brodie's invocations were not speculation or
> conjecture.  The credibility findings were predicated on
> the credibility of the testimony heard and the evidence
> presented.   The perjury of the NJSP regarding nearly
> every element of the encounter as well as the absence of
> impeachment evidence (possessed by Mr. Jacobs' yet not
> presented   to   the   Court)   was   critical   to   sound

---

[6] The Court placed these documents under a temporary seal out of
concern that they included sensitive identifying information,
i.e., Petitioner's full birthdate and copies of Petitioner's and
Mednick's drivers' licenses.  ECF No. 51.  The Court instructed
the seal to be lifted in 20 days unless the United States
objected.  Id.  The Court has reviewed the documents and finds
that the temporary seal will be lifted as appropriate redactions
have been made, the rest of the material is not the kind of
information that would normally be entitled to sealing, and the
United States has not submitted any objections to the lifting of
the seal.

[7] Although the Court has previously dismissed the underlying
Brady claims as procedurally defaulted, it is necessary for both
clarity's sake and for completeness of the record to address
some background of the facts as part of resolving the
ineffective assistance of counsel claims.

> credibility determinations as it is to claims of
> ineffective assistance of counsel.

ECF No. 48 at 9-10 (emphasis in original); see also ECF No. 36
at 1 (faulting Jacobs "for not detecting [the AUSA's]
deception").  He continues to assert the Inspira records were
incomplete, but shifts the blame from the US Attorney's Office
to the VA.  See, e.g., id. at 3 (suggesting the subpoenaing of
"the VA employee whose name is listed as requesting those
September 20, 2017 Inspira medical records 'for billing
purposes.'  By doing so, we would identify why that person
renumbered/removed 2/3 of the original documentation . . . .");
id. at 6 ("The VA **altered** Brodie's 09/21/2017 records and [the
US Attorney's Office] used it to the government's gain and
profit." (emphasis in the original)).  The Court interprets
Petitioner's submissions as a concession that Jacobs did receive
the CAD and certain extraction reports prior to trial and limits
its ineffective assistance analysis of those documents to the
decision not to use them on Petitioner's behalf.  It also
considers Petitioner's claim that Jacobs was ineffective for
failing to request the complete Inspira records and other
extraction reports.

1. Failure to Present Expert Testimony

Petitioner argues he received ineffective assistance of
counsel during the motion to suppress his statements to the FBI

because Jacobs should have called Dr. Gerald Cooke as an expert
witness "to ascertain his ability to consent to the F.B.I.
interview . . . that the interview occurred while Brodie was in
'a medication induced withdrawal state' at the time of that
interview" and was "denied calls to his lawyer and in the cruel,
inhumane conditions of confinement" of the Cumberland County
Jail.  ECF No. 20 at 20 ¶ 16.

Dr. Cooke testified on Petitioner's behalf at sentencing as
an expert in forensic psychology.  Sen. Hr'g Tr.  He testified
that he believed that Petitioner was experiencing "moderate
depression at the time of the offense" and was a low risk for
recidivism.  Id. 17:6-9, 18:7-13.  He further opined that the
"withdrawal symptoms [Petitioner] was experiencing when he was
unable to get his seizure medication and antidepressant
medication from the VA . . . was a major contributor to this
offense behavior."  Id. 20:8-11.  Dr. Cooke did not testify
about Petitioner's ability to consent to an interrogation and
stated that he had not reviewed any testimony from the pretrial
hearings.  Id. 33:4-19.

Petitioner has not shown that he was prejudiced by Jacobs'
decision not to call Dr. Cooke as a witness during the
suppression hearing.  Petitioner has not presented a sworn
statement from Dr. Cooke stating that he was available to
testify during the suppression hearing and would have testified

20

that Petitioner was unable to consent to the FBI interview.  "In the § 2255 context, other courts have similarly found that a petitioner needs to provide a sworn statement of fact from the proposed witness regarding what they would have testified to if a § 2255 petitioner is to establish Strickland prejudice." Baskerville v. United States, No. 13-5881, 2018 WL 5995501, at *13 (D.N.J. Nov. 15, 2018), aff'd No. 19-3583 (3d Cir. Aug. 13, 2021).  See also Duncan v. Morton, 256 F.3d 189, 202 (3d Cir. 2001); Huggins v. United States, 69 F. Supp. 3d 430, 446 (D. Del. 2014) (noting that movant did not provide an affidavit from the witness stating that he would have been available to testify and describing his potential testimony), certificate of appealability denied, No. 14-4129 (3d Cir. Mar. 9, 2015).

Where a petitioner asks the court to "speculate both as to whether [a witnesses] would in fact have testified on his behalf and as to what [the witness's] testimony would have been," rather than presents the court with sworn testimony, he will not be able to establish prejudice.  Duncan, 256 F.3d at 201-02 (citing United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989)).  In the absence of a sworn statement from Dr. Cooke describing his testimony, the Court cannot conclude that Jacobs' failure to call him as a witness was error or prejudiced Petitioner.  See Baskerville, 2018 WL 5995501, at *13 ("Given this omission, petitioner's declaration as to what these

witnesses would have testified to amounts to speculation that is insufficient to grant him relief, or at a minimum, conduct an evidentiary hearing on this claim with respect to these two witnesses."). Petitioner is not entitled to relief on this claim.

2. Failure to Obtain and Present Inspira Records

Petitioner also asserts Jacobs should have obtained his "complete" Inspira medical records. ECF No. 20 at 24. Petitioner argues the incomplete 17-page document from Inspira that was given to Jacobs by the United States was missing information that would have supported his claim that he invoked his right to counsel and impeached the credibility of the United States' witnesses at the suppression hearing. "The more complete medical records detail a custodial interrogation and a statement made by the petitioner e.g. 'denial of threats' by the petitioner [patient]." Id. at 14 (brackets in original). "The Inspira Medical records of 9/21/17 clearly demonstrate the petitioner was questioned and DENIED 'threatening the congressman or anyone at his office' while handcuffed to a bed and a 'state trooper at his bedside' . . . ." Id. He further argues "the records demonstrate Mednick recanted her [coerced] recorded interview with the NJSP and reported 'patient [MAY] have made threats, but not that she was aware of.'" Id. at 21 (brackets in original).

22

The Court has reviewed the Inspira records that Petitioner submitted and concludes that he has not shown he was prejudiced by Jacobs' failure to present them during the suppression hearing.  The submitted documents do contain more than the 17-pages that were turned over in discovery,[8] but there is nothing in the missing pages that reasonably would have led the Court to grant the motion to suppress.  See ECF Nos. 53-54.[9]  The additional pages do not support Petitioner's claim that he was subjected to a custodial interrogation or that Mednick recanted her statement to NJSP.  In fact, the records contain material that likely would have damaged Petitioner's case.

For example, the "nurse notes" that Petitioner asserts are exculpatory because they note that he denied making threats also include the observation that "Ms. Mednick was inconsistent when reporting details of patient's alleged threats to the Congressman," ECF No. 53-1 at 7, and "Ms. Mednick says patient is a 'compulsive liar', as well."  ECF No. 54 at 8.  The notes further reflect that Mednick "seemed to be focused on keeping patient out of jail" and that the physician "feels there is a

---

[8] To be clear, the Court does not find that the United States suppressed the medical records.

[9] Petitioner also argues that the alteration and withholding of his medical records violates the "Federal Records Act", 18 U.S.C. §§ 641, 2071(b).  ECF No. 48-2 at 3-4.  These two criminal statutes do not apply to Petitioner's case and are not a basis for relief under § 2255.

degree of manipulation to get patient from being jailed."  ECF
No. 54 at 8-9.  These observations are consistent with the
Court's findings at the suppression hearing.  Therefore,
Petitioner has not shown he was prejudiced by Jacobs' failure to
obtain these records and present them at the hearing.

    3. Failure to Present Guzman CAD

    Petitioner argues Jacobs erred by failing to use the CAD
report created by Officer Guzman to impeach his testimony as
well as the testimony of other officers.  "The Guzman CAD . . .
demonstrates (6) [NOT 4] troopers were on the scene from 4:09:30
p.m. until [Petitioner's] recorded transport at 4:45:16p.m.
nearly (36!) minutes passed between the initial encounter and
the petitioner being handcuffed."  ECF No. 20 at 29 (parentheses
and first brackets in original).  He further claims the CAD
report "conceal[ed] <u>Miranda</u> invocation (e.g. who was present at
the time and scene of arrest, their order of arrival, the
duration of the response and encounter, who read vs who
witnessed officers at Port Norris and the questioning that
occurred at Miranda after being read charges . . . )."  <u>Id.</u> at
32-33.  "[T]he NJSP deliberately omitted the presence of trooper
Townsend and the off-duty detective Steven Hillesheim 52 seconds
& 57 seconds prior to any of the troopers referenced as a basis
for their warrants, their reports of the investigation, and the
USCP's reports for investigation."  ECF No. 48 at 19.  "Either

of which, 52 or 57 seconds between 7555 and 7179 or 7534, is enough time to invoke Miranda exactly as Brodie testified and regardless of the crude manner in which he did so." Id.

There is not a reasonable probability that the Court would have granted the suppression motion had Jacobs introduced the Guzman CAD report during the hearing. The Court concluded, and the Third Circuit agreed, that Petitioner "was not in custody when the officers first arrived at his house; thus no Miranda warnings were required." United States v. Brodie, 824 F. App'x 117, 120 (3d Cir. 2020). The number of officers on the scene or the order of their arrival does not change the Court's analysis. See United States v. Scott, 590 F.2d 531, 532-33 (3d Cir. 1979). Moreover, Guzman testified during the hearing that he did not recall whether more than four people responded to the scene because he "was so focused on [Petitioner]" but admitted it was possible. July 16, 2018 Hr'g Tr. 128:22-23, 129:2-4. He further admitted he could not recall the timing of specific events because "everything happened so fast . . . ." Id. 135:3-4.

Petitioner's argument that the 36 minutes reflected in the CAD report belies this assertion and "proves the NJSP was on scene for more than 36 minutes before arresting and transporting Brodie, thereby refuting ALL accounts of those same troopers sworn testimony" is not persuasive. ECF No. 48 at 17. It is

perfectly reasonable that someone's perception of the passage of time would be skewed when they are in the middle of a high-stress situation.  Moreover, Jacobs questioned the officers about discrepancies in timing of the events and specifically the timing of the Miranda warning.  The Court concluded that "whatever their confusion may be about timing," the officers consistently testified that there was no effort to interrogate Petitioner while he was in NJSP custody.  The Guzman CAD report does not add anything meaningful to the analysis with generalized entries of dispatch, arrival, and "continuing investigation" times.

For example, Petitioner alleges the CAD report "indisputably refutes Hanlin's testimony; Hanlin was at 7188 Ackley Road with detective DelSordo (Unit 6261) from 9:20 p.m. until 1:19 a.m. on 9/21/17."  ECF No. 20 at 13.  "Hanlin could not have [possibly] been present for Miranda as he is listed at the scene during the time in which he testified under oath to have been 'the one who read Miranda' to the petitioner."  Id. (brackets in original).[10]  There is an entry for Unit 6261 at 10:13 p.m. for "continuing investigation."  ECF No. 47-2 at 5.

---

[10] Petitioner additionally argues that the signature on the Miranda card is "forged/altered."  ECF No. 20 at 13.  This contradicts Petitioner's sworn testimony at the Miranda hearing that it was his signature on the card. July 6, 2018 Hr'g Tr. 75:18-24.

It does not state where the unit was continuing its investigation, so the report does not "indisputably" prove that Hanlin did not administer <u>Miranda</u> warnings at the station around 11:25 p.m.

The Court denies relief on this ground as Petitioner has not satisfied the <u>Strickland</u> prejudice prong.

4. Failure to Present Extraction Reports

Petitioner further claims that Jacobs failed to present reports from Petitioner's phones that allegedly show that New Jersey State Police officers deleted messages that "exist as evidence of detailed knowledge of the security cameras capabilities at the petitioner's scene of arrest."  ECF No. 20 at 14.  <u>See also</u> ECF Nos. 8 & 9.  "The government does not want to discuss the impeachment evidence that exists in those remaining SMS text messages between Brodie and NJSP trooper Phillip Smith.  In those SMS text messages, trooper Smith admits to receiving faxes, information on extremist groups acquired via Brodie's investigative journalism, and evidence of financial impropriety and corruption between the VA and former congressman."  ECF No. 48 at 16.

Petitioner also states Jacobs did not obtain and present his fax records that showed "fax transmissions from the petitioner to trooper Smith regarding his attempts to register and surrender firearms as well as the fruits of his journalistic

27

work of impropriety regarding the VA Choice program." ECF No.
20 at 23. He alleges these records would have shown that "NJSP
deliberately parked their troop cars on the shoulders of NJ 718
(Ackley Road) more than 50 yards away from the petitioner's
residence to evade these cameras at the time of his arrest."
Id. "Under these circumstances, the petitioner's statement
should have been suppressed as inadmissible." Id.

The Court has reviewed the reports and finds there is
nothing in them that would create a reasonable probability of a
different result at the suppression hearing or at trial.
Petitioner has failed to satisfy Strickland, and the Court will
deny § 2255 relief.

5. Failure to Investigate Violation of Sequestration Order

Petitioner also claims that Jacobs failed to investigate a
violation of the Court's sequestration order during the Miranda
hearing. Petitioner alleges that he emailed Jacobs about "a
witness who observed a trooper remarking 'I think I paused mine'
(his bodycam) while sharing their testimony e.g., line of
question and their answers during evidentiary hearings, July
2018. Another trooper stated how he 'wished his was on' (body
camera)." ECF No. 48 at 16-17 (parentheses in original). "Most
reprehensible, is that Mr. Jacobs was emailed about these
trooper's remarks and sharing testimony under sequester as they
were happening and never requested a proper inquiry. The

Petitioner is in possession of these emails.  Mr. Jacobs did not take proper actions to deter it from happening on the second day of testimony (July 26th, 2018)."  Id. at 17.

Despite flooding the docket with voluminous and repetitive filings, Petitioner has not produced these emails or a sworn statement from the alleged witness about this claim.  He did, however, submit an email to that he sent to Jacobs dated July 24, 2018 with the subject line "RE:hearing July 26" in which Petitioner writes: "Thank you! Awesome job!"  ECF No. 50-5 at 1. Petitioner has not carried his burden of proof on either prong of the Strickland analysis, so the Court will dismiss this claim.

6. Assorted Ineffective Assistance Claims

Petitioner's remaining ineffective assistance claims argue that "Jacobs failed to deliver (some) discovery in a timely matter.  Mr. Jacobs failed to meet with Brodie and review evidence that Brodie articulated in emails with Jacob as corroborating his testimony.  Mr. Jacobs failed to request subpoenas for evidence in a timely manner prior to evidentiary hearings."  ECF No. 48 at 14.  He further alleges ineffective assistance in connection with failing to present the evidence of prosecutorial and law enforcement misconduct alleged throughout the amended motion.  ECF No. 20 at 3.

"The burden is on petitioner to demonstrate that the representation provided him by counsel was constitutionally inadequate." U. S. ex rel. Johnson v. Johnson, 531 F.2d 169, 174 (3d Cir. 1976).  Upon review of the papers submitted in support of and in opposition to the motion, and the relevant materials contained in the record of the underlying criminal matter, this Court finds that Petitioner has not satisfied this burden.

7.   Summary

Petitioner's various allegations raised in the Motion and elsewhere are serious – if true - and this Court treats them as such.  At sentencing, the Court noted that it had "spent countless hours trying to get to the bottom of Mr. Brodie's claims about prosecutorial misconduct, Brady violations, missing evidence, destroyed evidence."  Sen. Hr'g Tr. at 170:16-19.  The same may be said about its efforts to review his § 2255 motion fairly and completely.  At the end of the day, however, Petitioner has done nothing more than continue his pattern of making "outlandish, outrageous, false, apparently false, certainly lacking in evidence accusations against literally everyone who has had anything to do with this case."  Id. 171:11-13.  He continues to assert the existence of evidence that has never materialized despite submitting literally

30

thousands of pages.  Therefore, the Court will deny relief under § 2255.

IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This Court will deny a certificate of appealability because jurists of reason would not find it debatable that portions of the amended motion are procedurally defaulted and that Petitioner has not made a substantial showing of the denial of a constitutional right.

V.   CONCLUSION

For the reasons stated above, the Court will deny the amended § 2255 motion.

An appropriate order follows.


Dated:  July 6, 2023                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.